**KEY et al. v. DONNELL.**

No. 15804—Opinion Filed Oct. 30, 1924.

Rehearing Denied Dec. 16, 1924.

(Syllabus.)

**1. Statutes—Classification of Counties and Cities by Population—Reasonableness.**

The Legislature may classify the counties and cities of the state on the basis of population for legislative purposes, when the classification is not arbitrary and capricious, but is founded upon real and substantial distinctions, and the questions of population bears some reasonable, rational relation to the subject-matter.

**2. Same—Justices of the Peace—Act Limiting Number to Four in Large Cities Unconstitutional.**

The act approved March 28, 1923, chapter 224, Sess. Laws 1923, page 389, relating to justices of the peace in cities having a population of over 90,000, according to the last federal census, and fixing the number of justices of the peace to be elected at four, without repealing section 3424, Comp. Stat. 1921, which provides in all cities of more than 2,500 population two justices of the peace shall be elected, and in cities of more than 25,000 population there shall be elected an additional justice for each ten thousand inhabitants or fractional part thereby placing Oklahoma City, with over 90,000 population in a class with cities having between 35,000 and 45,000 population and less than cities having between 45,000 and 90,000 population, amounts to an arbitrary and capricious classification, and is a special and local act, and is in violation of section 59, article 5, of the Constitution and void.

Error from District Court, Oklahoma County: William H. Zwick, Judge.

Action by T. F. Donnell against George D. Key and others, members of Oklahoma County Election Board. Judgment for plaintiff, and defendants bring error. Affirmed.

John Howard Payne, Asst. Co. Atty., and Robert Burns, for plaintiffs in error.

D. S. Levy, for defendant in error.

McNEILL, J. T. F. Donnell commenced this action in the district court of Oklahoma county against the members of the Oklahoma county election board to secure a writ of mandamus requiring said election board to issue to him a certificate of nomination as justice of the peace, and to place his name on the ballot at the general election. It is alleged that chapter 224, Sess. Laws 1923, was null and void by reason of the arbitrary, capricious, and irrational classification made by the Legislature and is a local and special law, and cannot be sustain-

ed as a general law under article 5, sec. 59, of the Constitution, and is in violation of article 5, sec. 32, and article 5, sec. 46 B, of the Constitution. The trial court held chapter 224, Sess. Laws 1923, was null and void, and held section 3424, Comp. Stat. 1921, was in force and effect, and under and by virtue of said statute nine justices of the peace were to be nominated, and the plaintiff, having been one of the nine receiving the highest votes, had been duly nominated, and directed the election board to issue to him a certificate of nomination and place his name upon the ballot at the general election.

From said judgment the county election board has appealed. For reversal, it is contended, first, that the Legislature is authorized under the Constitution to increase or diminish the number of justices of the peace in cities having a population of over 2,500, provided it does not reduce the number to less than two; second, that chapter 224, Sess Laws 1923, is general and uniform in its application to all cities within a designated class, therefore not a local or special law; third, that in the construing of statutes, the intent of the lawmakers when ascertained must govern, and it must be presumed the intent of the legislative body was to benefit not injure, those interested in the subject of the law, and if there is a doubt or ambiguity of the statute, it is the duty of the court in interpreting the same to give it the most reasonable interpretation as the Legislature intended.

The defendant in error admits the general propositions of law urged by plaintiff in error correctly state the law, but contends they have no application to the principle of law involved herein, and contends, first, that section 1 of chapter 224, Sess. Laws 1923, by reason of the arbitrary, capricious, irrational, illusive, incomplete and deficient classification made by the Legislature, is a local and special law, and applies only to Oklahoma City and cannot be sustained as a general law under section 59, art. 5, of the Constitution; second, it cannot be sustained as a general law because no notice of its intended introduction was given as required by section 32, art. 5, of the Constitution; third, because it violates section 46 B of article 5 of the Constitution, forbidding the passage of local and special laws regulating cities and counties, etc. It is conceded the act, if held to be a local or special act, had not been advertised as required by section 32, art. 5, of the Constitution.

We think it is well settled from an examination of the authorities, which are almost unanimous, that the Legislature may legis-

late upon certain subjects and in the act make a classification of its application to cities, towns, or counties, upon the basis of population, and the law will be construed as a general law not within the inhibition of the Constitution against local and special legislation, provided the classification as made is a legitimate one and not arbitrary and capricious and bears some reasonable, rational relation to the subject-matter. The first question for consideration is whether the classification made by the Legislature in this act, upon the basis of population, was arbitrary, capricious, unreasonable, and used as a subterfuge for the purpose of passing an act general in form, but in reality a local and special act, and applicable only to Oklahoma City.

Section 18, art. 7, of the Constitution creates the office of justice of the peace, and provides that in cities of more than 2,500 population two justices of the peace shall be elected. It will thus be seen the office of justice of the peace was created by the Constitution, but the number of justices was left to the Legislature, within a certain limitation. Section 3424, Comp. Stat. 1921, relates to justices of the peace and provides, in substance, that in all cities having between 1,500 and 2,500 population, one justice of the peace shall be elected; cities having more than 2,500 and up to 25,000 population, two justices of the peace shall be elected, and one justice of the peace for each additional 10,-000 inhabitants or fractional part in excess of 25,000; that under the classification made in section 3424, supra, cities between 85,000 and less than 95,000 population shall elect nine justices of the peace. Chap. 224, Session Laws of 1923, does not interfere with the classification made in section 3424, supra, except in those cities of over 90,000 population it reduces the number to four. It is conceded that Oklahoma City is the only city in the state according to the last federal census that has a population of over 90,-000 and the act of 1923 will only apply to Oklahoma City.

It must be remembered the act under consideration is not an act creating a new court, but is in fact an act reducing the number of justices of the peace in cities having a population of over 90,000 and fixing salaries and jurisdiction. The principle of law involved herein is identical with the principle of law involved in the case of Board of Co. Commissioners of Oklahoma County v. Beaty, 67 Okla. 281, 171 Pac. 34. In the Beaty Case the Legislature, by classification on the basis of population, attempted to fix the salary of the court clerk of Oklahoma county at less than that in a number of counties of the state having a smaller population than Oklahoma county, and this court held the act invalid. In that case this court quoted with approval from the case of Burks v. Walker, 25 Okla. 353, 109 Pac. 554; Nichols v. Walter, 37 Minn. 264, 33 N. W. 800, and a quotation from Dillon on Municipal Corporations (5th Ed.) page 150; and a quotation from State ex rel. Douglas v. Ritt, 75 Minn. 533, 79 N. W. 535, in the order referred to. Said quotations are applicable to the facts in this case, and it is unnecessary to requote the same in this opinion. This court will take judicial notice of everything calculated to affect the statute, and in this case we have two acts of the Legislature, one a general act, applying to all cities of the state, classifying the number of justices of the peace to be elected, based upon the proposition, obviously correct, that the larger cities have more business for justices of the peace, and increasing the number according to population, upon the basis in cities of over 25,000 population of one for each 10,000; then we have the act of 1923, making a classification which applies only to Oklahoma City. a city with a population of 90,000, and placing it in the same class with cities between 35 000 and 45,000, and having fewer justices of the peace than cities having a population of more than 45,000 and less than 90,000. The basic principle of the former act in making the classification regarding population was upon the theory the greater the population the more justices of the peace necessary, and the later act is upon a contrary principle, placing Oklahoma City, the most populous city in the state, where it is presumed there is the most work for justices of the peace, classified with cities having a population of between 35,000 and 45,-000 and fewer than counties having between 45,000 and 90,000. If there is any theory how such a classification could be made, without being arbitrary and capricious. it has not been called to our attention. That this act is local and special, and intended to apply only to Oklahoma City, and is not a general law, is very apparent. That the Legislature in making a classification on the basis of population for legislative purposes must be governed by the rule that the classification must not be arbitrary, capricious, illusive, incomplete, and unreasonable, is stated in the case of Hatfield v. Garnett, 45 Okla. 438, 146 Pac. 24.

The Supreme Court of Michigan, in the case of Attorney General ex rel. Dingeman v. Lacy, 146 N. W. 871, in discussing the question of local and special legislation and the reason for applying the constitutional

provision referring to local and special legislation, used very appropriate language and stated as follows:

"Considering the history of legislation under the Constitution of 1850, it is apparent that there had grown up a pernicious practice on the part of the Legislature to pass local acts. The practice was bad in two very important particulars. In the first place much of the legislation thus enacted constituted a direct and unwarranted interference in purely local affairs and an invasion of the principles of local self-government. In the second place, such legislation, affecting as it did certain limited localities in the state, the Senators and Representatives from unaffected districts were usually complaisant, and agreed to its enactment without the exercise of that intelligence and judgment which all legislation is entitled to receive from all the members of the Legislature. This course led to many abuses (principally in amendments to city charters), some of which found their way into the courts, and were there redressed so far as the Constitution then in force would permit.

"With these evils in mind, the Constitution of 1908 was formulated and adopted by the people. From a reading of the provisions above quoted and others of a similar character, it is, we think entirely clear that it was the settled purpose of the framers of the new instrument and of the people who adopted it to forever insure to the people the right to control their affairs purely local, and to secure for all general legislation grave attention and the application of the collective wisdom of the legislators."

The new Constitution of Michigan was adopted in 1908, or about a year after the adoption of the Oklahoma Constitution. No doubt the framers of the Oklahoma Constitution had in mind and under consideration the same evil that existed in other states, and it was to correct that very evil that they embodied in our Constitution the provisions relating to passing local and special law. The Michigan court referred to the fact that in 1909 the Legislature of Michigan passed two acts that were local and special; in 1911, five acts, and in 1913 there were 13 such acts, passed on the theory of using the classification according to population for evading the Constitution, and giving the appearance that they were enacting a general law, while in fact they were local and special.

The history of our Legislature reveals the fact that shortly after the adoption of the Constitution very few laws were passed based upon classification of population where the population did not have a reasonable relation to the subject-matter or was used as a subterfuge. In 1919 this court in the case of Diehl v. Crump, 72 Okla. 108, 179 Pac. 4, which was by a divided court, held the act creating a superior court in counties having a population of not less than 19,990 and not more than 20,000 was valid, although the act applied to one county. While the cases relating to establishing courts might be distinguishable, as the Constitution authorizes the Legislature to establish additional courts that are inferior to the Supreme Court, it is now apparent the above decision is being used as a smoke screen for the purpose of evading the provisions of the Constitution.

An examination of the Session Laws since that decision disclosed that the Legislature has practically nullified the constitutional provisions relating to local and special legislation, under the guise and subterfuge of classification of legislative acts on the basis of population. The Legislature in 1921 passed at least twenty laws based upon the classification of population, although the acts were local and special, and each act applied to only one or two counties or cities in the state. These laws are not carried forward in the statutes, but are treated by the codifier as local and special bills. The Legislature of 1923, being the Legislature which passed the act in question, enacted more than 68 bills by classifying the same according to population under the pretense of enacting a general law, when in fact they were enacting local and special laws that applied to only one county, city, or town in the state, all of which is apparent from the acts themselves, and would not be clearer if the name of the city or county had been written in the act. The Special Legislature of 1923 and 1924 enacted sixteen similar acts.

We think it well to quote from the Supreme Court of Minnesota in the case of State ex rel. Douglas v. Ritt, 79 N. W. 535, wherein the court stated as follows:

"Judging from much recent legislation in this state, it would seem that the impression is prevalent that because classification on the basis of population may be proper for the purposes of legislation on certain subjects, therefore any classification on the basis of population is appropriate for the purpose of legislation on any subject. The sooner the minds of legislators and others are disabused of this erroneous impression the better; for under any such rule the provisions of the Constitution against special legislation would become wholly nugatory. If it is permissable to adopt for any and all purposes a classification founded upon any and every arbitrary and illusive basis of population, we might

have as many acts, general in form, but special in fact, as there are counties, cities, villages, townships, wards and school districts in the state. It ought to be apparent to any one on a moment's reflection that under the rules above stated classification on the basis of population may be appropriate for one purpose and not for another, — that is, for legislation upon one subject and not for legislation upon another."

An illustration of how the Constitution is evaded in passing local bills under the guise and subterfuge of drafting them as a general bill in form by using the basis of population as a rule for classification is found in chapter 238, Sess. Laws 1923, page 408. This act provides as follows:

"Section 1. That in all counties of the state of Oklahoma having a population of not less than 19,326, and not to exceed 19,-330 * * * that the section line road beginning at a point between section 1, township 6, north, range 3 west of the I. M. and section 6, township 2, north, range 2 west of the I. M. and continuing south on said line for a distance of twelve (12) miles, at a point to the south line of said county, between section 36, township 5 north, range 3 west and section 31, township 5 north, range 2 west is hereby designated as part of the state road system of said county."

The description in the act describes a road beginning at a certain point in McClain county. This description can apply to no other county in the state, but instead of describing this road as being located in McClain county, it refers to McClain county by population. The question of population has no relation to the subject-matter under consideration in the bill, but the population is simply used as a subterfuge and scheme to prevent the advertising of said bill according to the provisions of the Constitution and for the purpose of making section 46 B of article 5 of the Constitution inapplicable. Numerous other acts were passed relating to salaries and other legislation by designating the county or city by reference to population without specifically naming the county. While it is true the court must presume that the Legislature did not attempt to violate the Constitution, yet when the act itself discloses this fact and it is apparent upon its face that the classification by population is used as a subterfuge, this presumption is overturned.

It is well settled in this state, and we think in every state in the Union with a similar constitutional provision, when the Legislature attempts to legislate upon any subject and makes classification by reference to population, that classification must be a legitimate one, and bear some reasonable relation to the subject-matter, and must not be an arbitrary or capricious classification and used as a subterfuge for the purpose of passing a special law under the form of a general law. While it is unnecessary to overrule the case of Deihl v. Crump, supra, yet the court will no longer follow the rule announced therein.

The court is also of the opinion that the rest of the act in question, fixing the salary and jurisdiction of the court, is likewise invalid, for the reason the act is so drawn that it is apparent the remainder of the act would create a state of affairs that the Legislature plainly did not intend to exist, and no doubt violates the same constitutional provisions above referred to. The court is of the opinion the entire act is invalid.

For the reasons stated, the judgment of the trial court is affirmed.

NICHOLSON, V. C. J., and JOHNSON, BRANSON, WARREN, and GORDON, JJ., concur.