**CHICAGO, R. I. & P. RY. CO. et al. v. CARROLL, BROUGH, ROBINSON & HUMPHREY.**

No. 15365—Opinion Filed Dec. 15, 1925.

Rehearing Denied April 6, 1926.

(Syllabus.)

1. **Statutes—Local or Special Laws—Uniformity—Classification of Counties by Population.**

The Legislature may classify the counties of the state on the basis of population for legislative purposes, when the classification is not arbitrary and capricious, but is founded upon real and substantial distinctions, and the question of population bears some reasonable, rational relation to the subject-matter.

2. **Same—Creation of Special Court for Single County.**

A statute establishing a special court for a single county of the state is not a local or special law within the meaning of the provisions of the Constitution dealing with such laws.

3. **Same—Partial Invalidity of Act.**

Record examined, and held: (1) That section 1 of chapter 26, Session Laws 1923, is constitutional and valid. (2) That section 2 of said act is special and local legislation, and unconstitutional because it was not passed in accordance with section 32, article 5, of the Constitution, which prohibits the passage of special or local laws unless notice of intention to introduce said act has been published in the city or county affected by such law.

Error from Superior Court, Custer County; Thomas A. Edwards, Judge.

Action by Carroll, Brough, Robinson & Humphrey, a corporation, against the Chicago, Rock Island & Pacific Railway Company and the St. Louis & San Francisco Railway Company. Judgment for plaintiff, and defendants bring error. Reversed.

W. F. Collins, C. O. Blake, W. R. Bleakmore, and A. T. Boys, for plaintiffs in error.

A. J. Welch, for defendants in error.

MASON, J. This cause was originally filed in the district court of Custer county by Carroll, Brough, Robinson & Humphrey against the Chicago, Rock Island & Pacific Railway Company, and the St. Louis & San Francisco Railway Company, and on motion of plaintiff was transferred from the district court to the superior court of Custer county. When the transfer was made to the superior court, the defendants challenged and object-

ed to the jurisdiction of that court upon the grounds that the act of the Legislature creating the superior court of Custer county, and providing for the district judge to preside over the same, was in violation of the provisions of the Constitution of Oklahoma. This objection was overruled and exceptions duly saved, after which the case proceeded to trial and judgment was rendered in favor of the plaintiff, from which the defendants prosecute this appeal, still challenging the constitutionality and jurisdiction of said superior court.

Said court was created by chapter 26 of Session Laws of 1923, which provides as follows:

"Section 1. There is hereby created and established in each of the counties of this state having a population of not less than 18,400 and not to exceed 18,980, as shown by the federal census of 1920, and having therein a city of the first class with a population of not less than 2,500 located within five miles of the county seat of any such county, and the county seat therein having a population of not more than 500 as shown by the federal census of 1920, a court of civil and criminal jurisdiction, to be known as the superior court of such county, which shall be a court of record, and shall have and exercise the same jurisdiction as provided by law for other superior courts of the state; provided, that said court and the offices of its officers shall be held and maintained in the city, not the county seat, having the required population and location, as hereinbefore set out, and, in the event there are two or more cities falling within such requirements, then in the one of such cities having the greatest population; and provided, further, that such city shall furnish, free of charge, suitable and sufficient buildings, offices and quarters for said court and its officers.

"Same—Presided Over by District Judge.

"Section 2. That said court shall be held and presided over by the regular district judge within and for the judicial district including such county, and there shall be held four terms of said court a year, and such judge is hereby given, and shall exercise, the power to designate the time when such terms of court shall be held so as not to conflict with any of his other courts in such judicial district; and the court clerk of such county shall be the clerk of said court and shall perform all the duties thereof in the same manner and form as is required of him in his duties as clerk of the district court; and the court reporter of the particular judicial district employed as the reporter for the district court of said judicial district shall act as reporter for said court in the same manner as required of him by law as reporter for the district courts; provided, that

these services shall be performed by said judge, clerk and reporter without compensation other than that received by them as district judge, court clerk and district court reporter, that is to say, they shall have no additional compensation for services rendered in said superior court. The bond given by said clerk as court clerk shall be liable for his faithful performance of the duties of said superior court the same as required of him by law as court clerk."

It is conceded that the enactment of this statute resulted in the establishment of but one superior court in the state, viz., the superior court of Custer county.

It is contended by plaintiffs in error that to establish such court and provide for the district judge to preside over the same is violative of the provisions of the Constitution, particularly, of section 59 of article 5, which provides:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

Section 1, article 7, of the Constitution of Oklahoma provides:

. "The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

· Section 32 of article 5 of the Constitution provides:

 "No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State."

It will therefore not be denied that the Legislature has power to create courts in addition to those specifically enumerated in the Constitution.

No contention is made that notice of intention to introduce the act creating said court was published as required by section 32, article 5, of the Constitution.

Plaintiffs in error contend that said act is a special or local law and that the Legislature attempted to bring it within the classification of general laws by making it applicable to each county in the state "having a population of not less than 18,400

and not to exceed 18,980 as shown by the federal census of 1920."

As a general rule the Legislature may make a classification with reference to population in enacting general laws, but it is well settled in this state, and we think every state in the Union with a similar constitutional provision, that when the Legislature attempts to legislate upon any subject and makes classification with reference to population, that classification must be a legitimate one and bear some reasonable relation to the subject-matter, and must not be an arbitrary or capricious classification used as a subterfuge for the purpose of passing a special law under the form of a general law. Key v. Donnell, 107 Okla. 157, 231 Pac. 546.

In Hatfield v. Garnett, 45 Okla. 438, 146 Pac. 24, this court had under consideration chapter 77, Session Laws 1913, and in a well-considered opinion written by Mr. Justice Hardy said:

"* * * The act in question cannot be said to be general in its nature and uniform in its operation throughout the state, for upon its face it does not operate equally upon all counties in like situation, and has as its arbitrary basis for classification the federal census of 1910, and the act is not prospective in its operation, and must therefore be held to be local and special legislation. ·

"* * * The census of 1910, being taken as the sole basis of classification, must determine for all future time the status of all counties in this state with reference to the establishment of a superior court therein under the terms of this act; and the Legislature might as well have referred to the counties affected by name as to have undertaken a classification which could affect only the counties mentioned. * * * No matter what changes might occur in the population of the state in the future, and how great might be the increase in some counties or the decrease in others, there can never be any change under the terms of that act with reference to the existence of superior courts in the state. * * * No provision is made for a probable increase in population which may be shown * * * by any future census. * * *"

Therefore it will be observed that the population, which is made the basis upon which the court under consideration was created, is arbitrarily fixed by the federal census of 1920 as definitely as chapter 77, Session Laws 1913, fixed the basis of the establishment of that court by the population as shown by the census of 1910, and the reasoning applied in Hatfield v. Garnett, supra, applies with equal force to the case at bar. Although the Legislature attempted to make

the act under consideration general in form, yet the·fact remains that it created but one court, which was located in the city of Clinton in Custer county, just as effectively as if it had named said city and county. We must conclude that the classification used was arbitrary and capricious and, therefore, ineffectual to bring an act otherwise local and special within the classification and requirements of a general law.

The court, however, did not determine in Hatfield v. Garnett, supra, whether a law passed by the Legislature creating a single superior court was general or special, and did not have that question under consideration.

Therefore, if we eliminate that portion of the act under consideration attempting to fix such arbitrary and unreasonable classification, would said act be general or special?

We will first consider section 1 of the act, which creates said court. The question as to whether or not an act establishing a court for a single county is a local or a special law has been passed on by a majority of the courts of this country, and the opinions seem to be about equally divided. Those cases which hold that such legislation is special and local. appear to be founded upon better reasoning, but we are committed to the opposite rule, which has heretofore been adopted by this court.

In Diehl v. Crump, 72 Okla. 108, 179 Pac. 4, this court had under consideration the act of the Legislature creating the superior court of Okfuskee county, and that part of the act creating the court was held not in violation of the Constitution governing local or special legislation, in an opinion written by Mr. Justice Kane, in which he uses the following language:

"In Leatherock v. Lawter, 45 Okla. 720, 147 Pac. 324, the question of whether an act establishing a superior court for a single county was local or special law was presented squarely to this court for determination. After a careful consideration of the question the court answered the question in the negative, and also held that the act which repealed the act establishing a superior court in Custer county was general in its nature and uniform in its operation, in that it affected all the citizens of the state alike so far as the exercise of its jurisdiction and power is concerned. Whilst the writer of this opinion dissented in the Leatherock Case, and still believes that legislation of this kind is purely local and special, there can be no doubt that the Leatherock Case is squarely in point here, and·upholds the constitutionality of the section of the act creating the court."

Some contention is made, however, that this holding was practically, although not specifically, overruled in the case of Key v. Donnell, supra, wherein the court, speaking through Mr. Justice McNeill, said:

"While it is unnecessary to overrule the case of Diehl v. Crump, supra, yet the court will no longer follow the rule announced therein."

We do not believe that the language just quoted was directed at the portion of the opinion in Diehl v. Crump, supra, which was quoted from the case of Leatherock v. Lawter, supra. In Key v. Donnell, the court was dealing with an act which had been passed by the Legislature by using an arbitrary and unreasonable classification based on· population for the purpose of evading the Constitution, and giving the appearance that a general law was being enacted, while in fact the act was local and special. In the body of the opinion Mr. Justice McNeill states:

"It must be remembered the act under consideration is not an act creating a new court."

And further on in the opinion this language is used:

"While the cases relating to establishing courts might be distinguishable, as the Constitution authorizes the Legislature to establish additional courts that are inferior to the Supreme Court, it is now apparent the above decision is being used as a smoke screen for the purpose of evading the provisions of the Constitution."

The opinion in Diehl v. Crump also discloses that Mr. Justice McNeill dissented from that portion of the opinion sustaining the constitutionality of the part of the act which made it applicable to counties "having a population of more than 19,990 and not to exceed 20,000."

It is therefore clear that when Justice McNeill stated in Key v. Donnell, supra, that the court would no longer follow the rule announced in Diehl v. Crump he was referring to that portion of the opinion which held the act constitutional as a general law, although based on an arbitrary and capricious classification founded upon population.

The opinion in Diehl v. Crump, supra, was adopted by this court on February 25, 1919, and had not been overruled in February, 1923, at the time the act creating the court under consideration was passed. The Legislature in passing said act, no doubt, was familiar with the decision of this court holding that the creation of a court was general legislation and it had a right to rely upon the rule therein announced.

It is true, of course, that the Legislature placed the provisions relative to population in said act, but this was done, no doubt, through abundance of caution, to show that a general act was intended.

It also appears that several hundred cases of all kinds, including those involving land titles, divorces, etc., have been disposed of by said superior court since its creation. To strike down, at this late date, the rule announced in Leatherock v. Lawter, supra, and in Diehl v. Crump, supra, and hold the act creating said court unconstitutional would work a great hardship on litigants who have relied thereon, and create endless confusion. Whether that decision was right or not, public policy and sound legal principle demand that we now adhere to it.

It is the duty of this branch of the government to pass finally upon the construction of a law, and determine whether the Legislature in its action has transcended its constitutional limits; and the people of the state have a right to expect, with confidence, that we will adhere to decisions made after full argument and upon due consideration. The members of this court may change totally within a period of a very few years, and if each change in the organization produces a change in the decisions, and a different construction of laws, under which important rights and interests have become vested, it is easy to see that the consequences will be most pernicious.

Therefore, although we have heretofore concluded that the act cannot be sustained as a general law by reason of the unreasonable, arbitrary, and capricious classification based on the federal census of 1920, yet paragraph one of the act which creates a court must be held to be general legislation and constitutional.

It does not follow, however, that because section 1 of the act is general and not special or local legislation, the same must be said of section 2.

It will be observed that section 2, among other things, provides that said court shall be held and presided over by the regular district judge within and for the judicial district including said county. This section pertains to and places additional duties upon but one of the numerous district judges of the state, to wit, the judge of the district of which Custer county is a part, and confers upon him powers not given to any other district judge of the state. It is therefore obvious that said section is purely local or special legislation, and no notice having been given of the intention to introduce said

act in the Legislature as provided by section 32, article 5, of the Constitution, we must conclude that the same is invalid and unconstitutional.

The trial court therefore erred in refusing to sustain the objection of the defendants to the jurisdiction of the court.

Inasmuch as considerable confusion may be created in the minds of litigants in cases which have heretofore been disposed of by said court by reason of the fact that we have concluded that section 2 is invalid, we deem it advisable to state that the district judge in acting as the judge of the superior court was acting as a de facto judge and his acts would not be invalid by reason of the unconstitutionality of section 2.

For the reasons herein set forth, the judgment of the trial court is reversed.

NICHOLSON, C. J., and HARRISON, LESTER, HUNT, and CLARK, JJ., concur. BRANSON, V. C. J., and RILEY, J., concur as to the constitutionality of section 1, and dissent as to the invalidity of section 2 of the act. PHELPS, J., concurs as to the invalidity of section 2, and dissents as to the constitutionality of section 1 of the act.