OKLAHOMA CITY v. EXCISE BOARD OF OKLAHOMA COUNTY et al.

No. 31540. Oct. 5, 1943.

Rehearing Denied October 19, 1943.

*141 P. 2d 805.*

A. L. Jeffrey, Municipal Counselor, and Leon Shipp, Asst. Municipal Counselor, both of Oklahoma City, for plaintiff in error.

George Miskovsky, County Atty., and Norman J. Futor, Asst. County Atty., both of Oklahoma City, for defendants in error.

RILEY, J. This proceeding was instituted in the district court of Oklahoma county by the city of Oklahoma City. A writ of mandamus was sought to require the county excise board to allocate four mills of the 1943 ad valorem taxes for the benefit of plaintiff to finance its budget requirements.

The petition is based upon the provisions of Senate Bill No. 238, 1943 Session Laws, page 273 (Title 68, sections 287.1 and 287.2, 1943 Supplement to Oklahoma Statutes 1941).

An alternative writ was issued. The defendant excise board filed its answer and return wherein it denied that plaintiff was entitled to have apportioned four mills under the 1933 amendment of section 9, art. 10, of the Constitution, because apportionment is a matter subject to the discretion of the several county excise boards; that no authority is vested in the Legislature to impose restraints on the discretion of some of the excise boards as opposed to others; that Senate Bill No. 238 is unconstitutional and invalid for the reasons that:

(a) It is arbitrary and capricious, and its use of population and assessed valuation figures in classifying counties is neither consistent nor rational.

(b) Although it was not advertised as a local or special bill, it is in effect a local or special bill, but it deals with a subject which must be governed by the legislation of a general character.

(c) It attempts to establish divers standards of authority, discretion, and jurisdiction among the several county excise boards of the state, whereas the authority, discretion, and jurisdiction of the several county excise boards must conform to a single state-wide standard.

And that it is violative of sections 46, 57, and 59 of article 5 of the Constitution.

The answer also alleged the invalidity of the act because of changes in the title of the bill after its passage and before it was signed by the Governor. These allegations were stricken on the motion of plaintiff and need not be considered.

The board of county commissioners of Oklahoma county obtained leave to intervene, and in its petition joined in the challenge of the validity of Senate Bill No. 238, supra.

The issues thus joined were tried to the court, resulting in the judgment that the statute, supra, is unconstitutional. The writ was denied on that ground.

Section 2 of Senate Bill No. 238, supra, upon which plaintiff relies, provides:

"In all counties having a population of not less than One Hundred Ninety Thousand (190,000) and containing cities having a population of not less than One Hundred Forty Thousand (140,000), according to the Federal Decennial Census of 1940, it shall be the mandatory duty of the County Excise Boards of the State to levy five (5) mills for county purposes, four (4) mills for city purposes in such cities having a population of not less than One Hundred Forty Thousand (140,000), and not less than six (6) mills for school purposes; provided that after the year 1944, the mandatory levy tor school purposes in districts wherein such cities have a population in excess of One Hundred Forty Thousand (140,000) shall be five (5) mills and the one (1) mill dropped from the school levy for any of the above purposes at the discretion of the County Excise Boards."

The municipal counselor of Oklahoma City contends that the respondent in a mandamus proceeding to compel the performance of a ministerial duty may not set up as a defense the unconstitutionality of the statute, and cites Threadgill et al. v. Cross, Secretary of State, 26 Okla. 403, 109 P. 558; and State ex rel. Cruce, Governor, v. Cease et al., 28 Okla. 271, 114 P. 251. These cases sustain the contention as to the defendant county excise board. The reason for the rule there stated is that in those cases the respondents had no personal or property interest in the controversy. But since Oklahoma county was permitted to intervene, a different situation arises. The board of county commissioners is the county for the purpose of this case. The county has a direct interest in the question for the reason that if the act be valid the excise board would be required, for two years at least, to allocate four mills of the ad valorem taxes to Oklahoma City, and eleven mills to the city school district and the county.

The financial interest of the county is sufficient to authorize it to question the constitutionality of the act in question, and it was not error to deny the motion of plaintiff to strike the allegations from the petition in intervention of the board of county commissioners.

The judgment of the trial court does not state the particular ground upon which the act was held unconstitutional, but that the act is unconstitutional "in accordance wih the allegations and contentions of the defendants' answer and the intervener's petition." The first ground set forth in the answer is that the act is arbitrary and capricious and its use of population and assessed valuation figures in classifying counties is neither consistent nor rational. It is apparent, and must be conceded, that so far as section 2 of the act is concerned, it applies to two counties only, and as to cities affected it applies only to Oklahoma City and Tulsa. The two cities are set apart in a class wherein the excise boards must allot four mills of the 15-mill ad valorem tax to the respective cities. In all other counties the excise boards are vested with discretion as between the county and city and may apportion the tax according to the respective needs. The real issue is whether the legislative classification bears a reasonable relation to the subject matter. The power of the Legislature to classify counties according to population, for legislative purposes, has been before this court a number of times. There are also a number of cases where the classification was based upon population of the county and the existence therein of a city with a given population.

In Burks v. Walker, 25 Okla. 353, 109 P. 544, an act creating a superior court

for each county having a population of 30,000 and a city therein of 8,000 was upheld. See, also, Herndon, Judge, v. Anderson et al., 165 Okla. 104, 25 P. 2d 326; Leatherock v. Lawter et al., 45 Okla. 715, 147 P. 324; and Munroe v. McNeill, 122 Okla. 297, 255 P. 150.

Bell v. Crum, Court Clerk, 188 Okla. 67, 106 P. 2d 518, sustains an act providing that in each district court judicial district having a population in excess of 200,000 and a city therein having a population in excess of 100,000, the district judge shall receive, in addition to the salary paid him by the state, a salary of $3,200 per annum, payable from the court fund of the counties comprising the district. Defendants concede that such a classification would be proper as applied to the creation of courts or the establishment of a like institution, but contend that a different rule applies where the act relates to tax proceedings or relates to the standard of authority and jurisdiction of public boards and officers.

In Board of Commissioners of Grady County et al. v. Hammerly, 85 Okla. 53, 204 P. 445, an act providing a special proceeding for the liquidation of back taxes and assessments in cities having a population of 3,500 or more was held invalid for the reason that said act discriminated between cities of the first class having a population of less than 3,500 and other cities of the first class having a population of more than 3,500.

In Wilkinson v. Hale et al., 184 Okla. 165, 86 P. 2d 305, it is held:

"It is not essential, in order that a law be general in its operation as distinguished from local or special (as contemplated by section 46, article 5, and section 59, article 5 of the Oklahoma State Constitution, that it be universal in its application and operate the same in every section of the state and upon all persons, individuals or corporations, alike. On the contrary, the Legislature may classify for legislative purposes, but a classification so adopted must be neither arbitrary nor capricious and must bear a reasonable relation to the object to be accomplished."

In Roberts et al. v. Ledgerwood et al., 134 Okla. 152, 272 P. 448, it is held:

"Where an act of the Legislature excepts from the operation of the general laws of this state one or more counties without any fixed basis for such discrimination and no good reason is shown why all should not be subject to the same rule, it is invalid under section 59, art. 5, of the State Constitution, which provides laws of a general nature shall have uniform operation throughout the state. (Hudgins v. Foster, 131 Okla. 90, 267 P. 645.)

In Key et al. v. Donnell, 107 Okla. 157, 231 P. 546, it is said:

"It is well settled in this state, and we think in every state in the Union with a similar constitutional provision, when the Legislature attempts to legislate upon any subject and makes classification by reference to population, that classification must be a legitimate one, and bear some reasonable relation to the subject matter, and must not be an arbitrary or capricious classification and used as a subterfuge for the purpose of passing a special law under the form of a general law."

The real question is whether the classification in this case is arbitrary, unreasonable, or capricious, and used as a subterfuge for the purpose of passing a special law under the form of a general act.

Section 2 of the act is so drawn that it can apply only to two counties in the state and to one city in each of said counties. We may then inquire whether there is any reasonable basis for requiring a 4-mill levy for such purposes in a city having a population of not less than 140,000 merely because it happens to be located within a county having a population of not less than 190,000. It is obvious that if the fact that a city attains a population of 140,000 makes it necessary that it have a 4-mill levy, then why require that it be located in a county having a population of not less than 190,000?

As between the counties included

within the operation of the act and those omitted, there appears no distinctive characteristic upon which different treatments may be reasonably founded, which would furnish a practical and real reason for the discrimination.

The effect of the act is to take from excise boards in Oklahoma county and Tulsa county all discretion in the matter of apportioning the 15-mill ad valorem tax levy, leaving excise boards in all other counties the power to inquire into the needs of the respective municipalities. To this extent, the act destroys the uniform application of the general law which provides that the 15-mill ad valorem tax levy is to be apportioned by the several county excise boards between the cities, counties, and school districts. There is no reason apparent, and none have been indicated, as to why Oklahoma county and Tulsa county should be set apart and be arbitrarily limited to five mills of the 15-mill levy merely because each county happens to have located therein a city having a population of not less than 140,000, with no limitation placed upon the other 75 counties.

Section 59, art. 5, of the Constitution, provides:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

As we view it, the act here involved violates that part of said section which requires that laws of a general nature shall have uniform application throughout the state.

The holding of the trial court is correct, and the judgment is affirmed.

CORN, C. J., GIBSON, V. C. J., and DAVISON and ARNOLD, JJ., concur. OSBORN, HURST, and WELCH, JJ., dissent. BAYLESS, J., absent.