CITIES AND TOWNS SPECIAL LAWS — POPULATION CLASSIFICATIONS Title 11 O.S. 1385.1 [11-1385.1] through 11 O.S. 1385.9 [11-1385.9] (1971), 11 O.S. 30 [11-30] and 11 O.S. 30.1 [11-30.1] [11-30.1] (1975), and 19 O.S. 854.1 [19-854.1] through 19 O.S. 854.9 [19-854.9] (1971) are special laws within the prohibitions of Article V, Section 46 of the Oklahoma Constitution, by reason of their defective population classifications, and that since the population classification in each act is an integral part of the act, the same is not severable from the rest of the act and each act in its entirety is void. All actions heretofore taken by any city or town pursuant to the foregoing acts would be valid and effective since such legislative acts have been presumed to be constitutional and valid up to the present time. The Attorney General has considered your request for an opinion wherein you ask, in effect, whether the following acts violate the provisions of Article V, Section 32, Article V, Section 46, Article V, Section 59 of Article V of the Oklahoma Constitution, relating to special or local laws: 1. Title 11 O.S. 1385.1 [11-1385.1] (1971) et seq., relating to the financing and construction of docks, boat houses and other related recreational facilities by cities having a population of not less than 3,500 nor more than 4,000, according to the 1940 Federal Decennial Census. 2. Title 11 O.S. 30 [11-30] and 11 O.S. 30.1 [11-30.1] (1975), relating to the procedures for voting by incapacitated voters at municipal elections in cities and towns having a population of not less than 18,000 nor more than 40,000, according to the last Federal Decennial Census. 3. Title 19 O.S. 854.1 [19-854.1] through 19 O.S. 854.9 [19-854.9] (1971), relating to the establishment of regional planning commission by cities and towns having a population of 19,000 or more located in a county having a population of not less than 32,800 nor more than 34,800, according to the 1950 Federal Decennial Census. All of the legislative acts referred to above relate to the affairs of cities and towns. In addition, 11 O.S. 30 [11-30] and 11 O.S. 30.1 [11-30.1] (1975) relate to the conducting of elections and 19 O.S. 854.1 [19-854.1] through 19 O.S. 854.9 [19-854.9] (1971) relate to the creating of offices and prescribing powers and duties of officers in cities and towns. Local and special laws on certain enumerated subjects are prohibited by Article V, Section46 of the Oklahoma Constitution. Included within this prohibition are special and local laws relating to the affairs of cities and towns, conducting of elections, and creating offices or prescribing the powers and duties of officers in cities and towns. The pertinent portion of Section 46 of Article V reads as follows: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: "Regulating the affairs of counties, cities, towns, wards, or school districts; "For the opening and conducting of elections, or fixing or changing the places of voting; "Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts; . . ." Further, Article V, Section 32 of the Oklahoma Constitution provides as follows: "No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State." In reading Article V, Section 46 together with Article V, Section 32 of it at first glance might appear that a local or special law prohibited under Section 46 is only prohibited if Section 32 is not complied with. This, however, is not the construction that has been placed upon these two sections, by the Oklahoma Supreme Court. In State, ex rel. Nesbitt v. District Court of Mayes County,440 P.2d 700 (Okl. 1967), the Court held as follows in the third syllabus: "While Art. 5, 32, Okl. Const., requires the Legislature to publish notice in a specified manner before the intended introduction of a special or local act, it does not authorize enactment of such laws upon subjects expressly prohibited by Art. 5, 46, Okl. Const." Thus, the present question is limited to whether the acts referred to above are general and uniform or special or local laws, within the express prohibitions of Section 46 of Article V, since their subject matters are encompassed in such prohibitions; and if they are special or local laws, publication under Section 32 of Article V would have no validating effect. The answer to this question depends upon whether or not the classification established in each act is founded upon real and substantial distinctions and whether the designated differences in population bear some reasonable, rational relation to the subject matter of the particular act. If the classification in the act is founded upon a real and substantial distinction and the designated differences in population do bear some reasonable, rational relation to the subject matter of the act, then the act would be constitutional as a general law. If not, the Act would be a local or special law within the prohibition of Section 46 of Article V. See, Tulsa Exposition and Fair Board Corp. v. Board of County Commissioners, 468 P.2d 501 (Okl. 1970); Williams v. Johnson, 396 P.2d 518 (Okl. 1964); Haas v. Nolloman,327 P.2d 655 (Okl. 1958); Oklahoma City v. Excise Board of Oklahoma County, 193 Okl. 189, 141 P.2d 805 (1943); Thompson v. Stanley, 183 Okl. 445, 83 P.2d 386 (1938); and Key v. Donnell, 107 Okl. 157, 231 P. 546 (1924). In Haas v. Holloman, supra, the Court stated as follows in the second syllabus: "In order for a law to be general in its nature and to have uniform operation, it is not necessary that it shall operate upon every person in every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. But, where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination." In Williams v. Johnson, supra, the Court states in the syllabus as follows: "An attempted classification by the Legislature of counties on the basis of population for legislative purposes which is not founded upon real and substantial distinctions and in which the designated differences of population do not bear some reasonable, rational relation to the subject matters unconstitutional as being a local or special law and not a general law." In Key v. Donnell, supra, the Court stated at page 160 of the opinion as follows: "It is well settled in this state, and we think every state in the Union with a similar constitutional provision, when the legislature attempts to legislate upon any subject and makes classification by reference to population, that classification must be a legitimate one, and bear some reasonable relation to the subject-matter, and must not be an arbitrary or capricious classification and used as a subterfuge for the purpose of passing a special law under the form of a general law . . ." The above-mentioned legislative acts must be measured under the foregoing rules and guidelines to ascertain if they are special or local laws or general laws. Title 11 O.S. 1385.1 [11-1385.1] (1971) et seq., enacted in 1949, authorized a city or town having a population of 3,500 to 4,000, according to the 1940 Federal Decennial Census, and, owning land, within or outside its corporate limits, adjoining a lake or large body of water, to construct boat docks, boat houses and other related recreational facilities and to finance the same by issuing bonds. In applying the previously cited rules and guidelines to this act, it is necessary to ascertain whether or not the population limitation of 3,500 to 4,000 bears any reasonable, rational relationship to the subject matter of the act, and whether or not as between those cities and towns included within the operation of the law and those omitted from the operation of the law, there is some distinctive characteristic upon which a different treatment may reasonably be founded. If the act had provided only an upper limitation of 4,000 population and applied to all cities and towns of less than 4,000, it would appear that it would be reasonable to authorize the financing of these recreational facilities by bond issue in the smaller cities and towns since presumably larger cities and towns would have more extensive financial resources and larger tax bases upon which to fund such recreational facilities without a bond issue. This, however, is not the case. The act not only excludes from its operations those cities which are larger than 4,000 in population but also excludes from its operations those cities and towns which have less than 3,500 population. Further, population is determined under the act at a fixed point in time, according to the 1940 Federal Decennial Census. Thus, all cities and towns which did not have a population of 3,500 to 4,000 as of the time of the 1940 Federal Decennial Census are excluded from the class of cities and towns within operation of the act. According to the 1940 Federal Decennial Census the following cities and towns in the State of Oklahoma with the following populations formed the class of cities and towns included within the operation of the act: Idabel 3,689 Nowata 3,904 Okemah 3,811 Wagoner 3,535 Under the 1970 Federal Decennial Census, the following additional cities and towns would meet the population limits of the act, except that since such limits are tied to the 1940 census, these cities and towns are omitted from the class of cities and towns to which the act is applicable: Bixby 3,973 Dewey 3,958 Lindsay 3,705 Marlow 3,995 Spencer 3,714 Watonga 3,696 It should also be pointed out that Nowata, having a population of 3,679, is the only city or town included in the act which still meets the population requirements of the class, according to the last Federal Decennial Census (1970). All of the other cities and towns which formed the class included within the provisions of the act under the 1940 census no longer have a population, of not less than 3,500 nor more than 4,000, according to the 1970 census. Based on the foregoing, it would appear that as between those cities and towns included within the act and those omitted from the act there does not appear to exist any factually distinctive characteristic upon which different treatment may reasonably be founded. Title 11 O.S. 1385.1 [11-1385.1] through 11 O.S. 1385.9 [11-1385.9] (1971) would, therefore, be a special law in violation of Article V, Section 46 of the Oklahoma Constitution. Further, it appears that the population classification is an integral part of the act since the act is obviously tailored solely for those cities and towns having a population of 3,500 to 4,000 as of 1940. Thus, the population classification would not be severable from the rest of the act and the whole act would fall, Tulsa Exposition and Fair Board Corp. v. Board of County Commissioners, supra. In looking at the provisions of 11 O.S. 30 [11-30] and 11 O.S. 30.1 [11-30.1] (1975), enacted in 1975, which set up a procedure in municipal elections for voting by incapacitated voters and is applicable to cities and towns having a population of not less than 18,000 and not more than 40,000, which enact such procedure by ordinance, the same rules and guidelines cited above would be applicable in determine the question of whether or not it is a special or general law. The act would be applicable to the following 12 cities if such cities chose to enact the same by ordinance: Altus 23,302 Ardmore 20,881 Bartlesville 29,683 Bethany 22,694 Del City 27,133 Duncan 19,718 McAlester 18,802 Moore 18,761 Muskogee 37,331 Ponca City 25,940 Shawnee 25,075 Stillwater 31,126 As to those cities having a population of less than 18,000 and those cities having a population of more than 40,000, and those cities having a population between 18,000 to 40,000, which choose not to enact the provisions of Sections 30 and 30.1 by ordinance, the laws governing state and county primary and general elections would be applicable to the procedure for voting by incapacitated voters in municipal elections. Under the laws governing state and county elections, 26 O.S. 327.10 [26-327.10] through 26 O.S. 327.13 [26-327.13] (1975) set out the procedure for voting by incapacitated voters. Under this procedure, the voting is by mailing the ballots and materials to the incapacitated voters and their returning the same by mail. Under 11 O.S. 30 [11-30] and 11 O.S. 30.1 [11-30.1] (1976) the procedure is considerably different, in that it provides for the establishment of voting boards which personally deliver the ballots to the voters and the voters mark the ballots in the presence of one of the boards. While the size of cities or towns could reasonably have a bearing on why different procedures are prescribed for voting by incapacitated voters, based on mailing and personally delivering ballots, it does not reasonably follow that there is any rational basis for allowing cities with 18,000 to 40,000 population to establish voting boards to personally deliver the ballots to the voters while those cities having less than 18,000 are to handle the same by mail along with the larger cities. It would, therefore, follow that the provisions of 11 O.S. 30 [11-30] and 11 O.S. 30.1 [11-30.1] (1975) would be a special law in violation of Article V, Section 46 of the Oklahoma Constitution, and for the same reasons expressed in regard to the first act, the population classification would not be severable and the whole act would fall. Concerning the provisions of 19 O.S. 854.1 [19-854.1] through 19 O.S. 854.9 [19-854.9] (1971), enacted in 1955, which provides for the establishment of a regional planning commission by any city or town having a population of 19,000 or more located in a county having a population of 32,800 to 34,000, according to the 1950 Federal Decennial Census, this act would only apply to the City of Bartlesville in Washington County. According to the 1950 Federal Decennial Census, two counties meet the population requirements of the act, Osage County, with a population of 33,071, and Washington County, with a population of 32,880; however, Washington County was the only one with a city or town of 19,000 or more population, according to the 1950 census. Further, we are advised that no regional planning commission, under 19 O.S. 854.1 [19-854.1] through 19 O.S. 854.9 [19-854.9] (1971), presently exists. For the reasons expressed in regard to the two previously discussed acts, it would follow that 19 O.S. 854.1 [19-854.1] through 19 O.S. 854.9 [19-854.9] (1971) would constitute a special law in violation of Section 46
of Article V of the Oklahoma Constitution, and the population classification contained therein would not be severable and the whole act would fall. It is, therefore, the opinion of the Attorney General that 11 O.S. 1385.1 [11-1385.1] through 11 O.S. 1385.9 [11-1385.9] (1971), 11 O.S. 30 [11-30] and 11 O.S. 30.1 [11-30.1] (1975), and 19 O.S. 854.1 [19-854.1] through 19 O.S. 854.9 [19-854.9] (1971) are special laws within the prohibitions of Article V, Section 46 of the Oklahoma Constitution, by reason of their defective population classifications, and that since the population classification in each act is an integral part of the act, the same is not severable from the rest of the act and each act in its entirety is void. It is the further opinion of the Attorney General that all actions heretofore taken by any city or town pursuant to the foregoing acts would be valid and effective since such legislative acts have been presumed to be constitutional and valid up to the present time. (Gerald E. Weis)