James S. ELIAS, Plaintiff in Error,

v.

CITY OF TULSA, a Municipal Corporation,
Defendant in Error.

No. 40723.

Supreme Court of Oklahoma.

Oct. 26, 1965.

Rehearing Denied Dec. 7, 1965.

Pat Malloy, N. E. McNeill, Jr., Tulsa, for plaintiff in error.

Charles E. Norman, City Atty., Louis Levy, Asst. City Atty., Tulsa, for defendant in error.

DAVISON, Justice.

James S. Elias appeals from a judgment rendered in two consolidated cases in favor of the City of Tulsa.

One of the cases called for a determination of the issues presented in an appeal by Elias to the District Court of Tulsa County from an order of the Board of Commissioners of the City of Tulsa, denying his application for rezoning of his property from residential (U–1B) to a commercial (U–3D) classification. In the other case the City of Tulsa filed an action to enjoin Elias from using his property as a public eating place in violation of the City's zoning ordinance. In the judgment the court refused to rezone the property for commercial use and granted the injunction.

Our disposition of this matter is based upon a determination of the power and authority of the City to impose a zoning classification on the property, under the facts, circumstances and law involved in the case.

Elias acquired the property in March, 1958, and began operating a restaurant in the residental type structure. The address of the property was 2905 East 51 Street and it was then located a short distance outside the city limits and within a five mile strip adjoining the southern boundary of the City of Tulsa. The City's brief reflects the property is presently within the city limits. In December, 1956 (prior to Elias acquiring the property) the City had enacted a zoning ordinance whereby the property was zoned for residential (U–1B) use. The zoning ordinance was enacted by, the City pursuant to powers granted by an Act of the 1955 Legislature, 19 O.S.Supp. 1955, Secs. 863.1–863.43.

Section 863.2 of the 1955 Act, supra, provided in pertinent part that any county having an assessed valuation of not less than $200,000,000 and having within its boundaries, a city of not less than 180,000 and not more than 240,000, according to the last or any future Federal Decennial Census, was

authorized to form a cooperative planning commission with such city, and that:

"* * * Such city is hereby empowered to adopt, amend, extend, add to or carry out a city plan for such city and such surrounding territory as lies within five (5) miles of the boundaries of such city, excluding, however, any other incorporated area as hereinafter provided, or any portion of an adjoining county having a population of not less than 43,143, and not more than 43,-243 according to the last Federal Decennial Census or any future Federal Decennial Census * * *".

The issue as to the constitutionality of the above legislative Act and of the ordinance was raised by the pleadings and was presented by a stipulation of the parties as being an issue of law to be determined by the trial court. A determination by this court that the 1955 Act is unconstitutional would eliminate the statutory authority for the zoning ordinance restricting the property to a residential use. In this connection we recognize, as did the lower court, that the 1959 Legislature (H.B. 528, Session Laws 1959, p. 105, Sec. 2; 19 O.S. 1961, Sec. 863.2) amended the above narrated and quoted portion of the 1955 Act, by providing a revised classification or description of the county entitled to make use of the authority and powers therein granted. Elias' use of the property for restaurant purposes began prior to the 1959 amendment and would be an existing nonconforming use from the standpoint of contrary zoning effective after the 1959 amendment and therefore give rise to an entirely new controversy as to his rights in that status. A determination as to the constitutionality of the 1955 Act is all that is required in this present controversy in order to determine whether Elias' use of the property was in violation of a valid ordinance. For this reason we will not pass on the question of the constitutionality of the law after the 1959 amendment.

Elias contends that the 1955 Act, supra, is in violation of Sec. 46, Art. 5, of the Oklahoma Constitution, prohibiting local or special laws regulating the affairs of counties and cities; and of Sec. 59, Art. 5, providing that laws of a general nature shall have uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted; and was invalid as a special or local law because of failure to comply with Sec. 32, Art. 5, requiring publication notice prior to legislative consideration of such a law.

The City bases its argument on the validity of the 1955 Act as amended in 1959, supra. As stated above, the determination of the present controversy revolves around the validity of the 1955 Act and the zoning ordinance based thereon. We will treat the City's argument as being addressed to the validity of the 1955 Act. The City contends that the 1955 Act was a general law and valid in all respects and was not a local or special law, and that it was not necessary to publish notice as required by said Sec. 32, Art. 5, of the State Constitution.

The City does not deny that the descriptive language in Sec. 863.2 of the 1955 Act is applicable only to Tulsa County, and excludes the one county in the State having a city with a greater population (Oklahoma County) and excludes all other counties. In fact, the City admits that "the act when adopted in 1955 was a suit that fit only one party, and that was the Tulsa metropolitan area."

■ The determinative question presented to this court is whether the 1955 Act was a general law. In deciding whether an act is a general law as distinguished from a local or special law the answer to the problem depends fundamentally on whether there is a proper and legitimate classification, and each case must be decided on its own merits. Sheldon v. Grand River Dam Authority, 182 Okl. 24, 76 P.2d 355.

■ Classification by reference to population must be a legitimate one, and bear some reasonable relation to the subject matter, and must not be an arbitrary or

**520**

capricious classification and used as a subterfuge for the purpose of passing a special law under the form of a general law. Key v. Donnell, 107 Okl. 157, 231 P. 546.

In Roberts v. Ledgerwood, 134 Okl. 152, 272 P. 448, we stated the factors to be considered in determining whether a legislative act was in fact general in its nature, as follows:

"In order for a law to be general in its nature and to have a uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. * * * But, where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject-matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination."

Decisions to the same or similar effect are Wilkinson v. Hale, 184 Okl. 165, 86 P. 2d 305; Barrett v. Board of Comr's of Tulsa County, 185 Okl. 111, 90 P.2d 442; Williams v. Hutchens, 187 Okl. 268, 102 P. 2d 841; and Haas v. Holloman, Okl., 327 P.2d 655.

As stated above the 1955 Act was "tailored" to apply to Tulsa County, even to the extent of excluding from the 5 mile perimeter strip that portion of an adjoining county having a population between 43,143 and 43,243, which could only refer to adjoining Creek County. Disregarding this exclusionary provision that was applicable only where there existed the combination of Tulsa and Creek Counties, the only other county in the State that in any way came close to falling within the statutory classification was Oklahoma County, which had Oklahoma City with a 1950 population of 243,504.

It is very pertinent that the grant (19 O.S.Supp.1955, Sec. 863.13) to the City of Tulsa of zoning power within the 5 mile perimeter area was:

"For the purposes of promoting the public health, safety, peace, morals, comfort, convenience, prosperity, order and general welfare, and to lessen danger and congestion of public transportation and travel, and to secure safety from fire and other dangers, and to prevent overcrowding of land, and to avoid undue concentration of population, and to provide adequate police protection, transportation, water, sewerage, schools, parks, forests, recreational facilities, military and naval facilities, and other public requirements, and to prevent undue encroachment thereon, * * *"

The 1955 Act does not reveal why the classification set forth therein made this zoning power available to the City of Tulsa, as the second largest city in the State with a population of 182,740, and failed to extend the same to the largest city with a population of only 3,504 inhabitants in excess of the statutory classification. The above "purposes" set forth certain general and specific conditions that are considered or deemed to be in need of improvement in cities falling within the classification, and specifically the City of Tulsa. These conditions relate generally to the welfare of the public and specifically to conditions that are a problem and in need of improvement in all large metropolitan cities. In fact it is recognized that problems of this nature tend to increase, rather than decrease, as a city becomes larger and the population becomes more concentrated. These conditions exist in Oklahoma City and in this respect it is not dissimilar to the City of Tulsa.

■ In Wilkinson v. Hale, supra, it is stated:

"Local or special laws are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class that they should naturally embrace. They create preference and establish inequality. They apply to persons, things, and places possessed of certain qualities or situations and exclude from their effect other persons, things, or places which are not dissimilar in this respect."

■ For the reasons stated it is our conclusion that the population classification in the Act was arbitrary and a subterfuge, and did not embrace all of the class that it should have naturally embraced.

■ The City urges that in considering the constitutionality of the 1955 Act this court should presume that the Legislature did not intend to violate the Constitution. We concede that this is the general rule of law. However, we have shown that the classification in the Act was arbitrary, capricious, and a subterfuge, designed to give the Act the appearance of a general law. In such a situation the presumption is overcome.

The City makes two additional contentions in support of the judgment of the lower court. It argues the Act is a general law because the population and assessed valuation classification is an "open" classification and that as cities in Oklahoma grow in the above respects, they will reach a position where they fall within the classification. It also argues that there was justification in making the Act apply only to Tulsa County and the Tulsa metropolitan area and excluding the larger City of Oklahoma City for the reason that there were fewer incorporated areas adjacent to the City of Tulsa than there was in the area surrounding Oklahoma City, and other differences, such as, difference in per capita earnings and the shape of the two counties.

It appears to us that there is an inconsistency in these two arguments that only serves to strengthen our conclusion that the classification in the 1955 Act was an arbitrary and unjustifiable classification. In the first place the classification was restrictive to the extent that it did not include Oklahoma County with a city of slightly larger population and similar enumerated statutory conditions. In the second place the classification based on alleged local conditions described as peculiar only to the City of Tulsa, negatives legislative intent to enact a general law having a uniform operation throughout the State, as required by Sec. 59, Art. 5, of the State Constitution. Under the present circumstances a holding that the classification in the 1955 Act was sufficient to render it a general law would make it permissible to adopt any arbitrary formula of population and valuation as a valid ground for a general law.

For the foregoing reasons we are of the opinion and hold, that Chapter 19Aa, S.L. 1955, 19 O.S.Supp.1955, Secs. 863.1–863.43, is unconstitutional.

Our conclusion renders it unnecessary to determine whether there was error in refusing to rezone the property.

The judgment of the lower court is reversed with instructions to render judgment in accordance with the views herein expressed.

JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.