Murray Reese **WILLIAMS** et al., Appellants,

v.

James **STARR** et al., Appellees.

No. 46829.

Court of Appeals of Oklahoma,
Division No. 2.

March 18, 1975.

Released for Publication by Order of the
Court of Appeals.

Garrett & Ford, Mangum, for appellants.

Harbison & Weber, Altus, for appellees.

BRIGHTMIRE, Judge.

More than forty Jackson County, Oklahoma, property owners bring this action against "The Metropolitan Area Planning Commission of Jackson County" and its individual members. They want the court to enjoin the planning commission from "adopting or enacting . . . [an] ordinance . . . relating to a Compatible Use Zone"—a term denoting a zone surrounding and compatible with the activities of the Altus Air Force Base adjoining the city limits of Altus, Oklahoma. Following a hearing the trial court denied the relief sought. Plaintiffs insist this was wrong because: (1) a justiciable controversy was presented by plaintiffs' petition; (2) 19 O.S.1971 § 866.1 et seq. is unconstitutional because it (a) is a local law, (b) denies plaintiffs due process and equal protection of the laws by denying them the right to be governed by a representative government.[1]

We agree plaintiffs' petition as amended fails to set out facts sufficient to show a then present justiciable controversy existed entitling plaintiffs to a declaratory judgment so that the result reached by the trial court was right regardless of whether the reasons he gave were. The basis for this conclusion in the main is that the two legal points raised in support of the action are, in our opinion, without merit leaving plaintiffs with a petition suggesting a potential rather than a present controversy.

While the enabling statute under which the defendant planning commission was set up—19 O.S.1971 § 866.1 et seq.,—may have some constitutional flaws we do not think one of them is that it is a special law prohibited by Okla.Const. art. 5, §§ 32, 46, 59. The one case cited by plaintiffs, Elias v. City of Tulsa, Okl., 408 P.2d 517 (1965), does not require such conclusion. There 19 O.S.1955 Supp. §§ 863.1–863.43—purporting to grant zoning power to certain municipalities over the land within the

five-mile perimeter beyond their limits— was condemned as unconstitutional because the general language of the act in fact described a population classification "tailored" to exclude all but Tulsa County. And because the court could discern no plausible reason for the exclusion of Oklahoma County—a county of a size comparable to Tulsa—from the benefits of the enactment, it struck down the classification as a facade capriciously erected to hide special legislation for Tulsa County.

The same defect is not shown to be present in §§ 866.1 et seq. This act pertains to counties containing less than 100,000 inhabitants and a city with a population of 5,000 or more. Thus it presently applies to at least three counties in southwestern Oklahoma—Tillman, Jackson and Beckham. We cannot say the classification is capricious merely because several other counties nearly come within its purview. Something more must be shown by plaintiffs for the invocation of the *Elias* principle and that is that there exists no legitimate relationship between the objective of the legislation and the restrictive classification employed. This they have not done.

The other reason for the inadequacy of the petition also provides an answer to plaintiffs' next proposition—that the enabling act in question suffers from a fatal constitutional infirmity by authorizing the appointment of a 10-member commission none of whom need to be residents of the area affected, instead of requiring one or more members to live in the contemplated zones and providing plaintiffs with some say as to their selection in keeping with the fundamental precepts of our representative form of government.

The reason the contention fails is because the defending commission not being a legislative body need not be composed of elected representatives. Indeed any attempt of the planning commission to legis-

1. Neither party makes any reference to the "Airport Zoning Act"—3 O.S.1971 §§ 101–115.

late would bring it afoul of more obvious constitutional barriers—a possibility which the court would be required to accurately forecast in order to create a present justiciable grievance. This the court has neither the legal nor intellectual capacity to do.

First of all 19 O.S.1971 §§ 866.2–866.34 (Ch. 19A) was originally enacted in 1957 as a combined planning and zoning enabling act for joint city-county governmental units in the particular areas of the state mentioned earlier. And while Chapter 19A has been amended from time to time its provisions clearly recognize zoning to be a legislative function which it confides in both municipal and county governments. By contrast § 866.1 only authorizes the establishment of a city-county "Metropolitan Area Planning Commission" to "function as an advisory, consultative and coordinating agency." Then § 866.2 prescribes that a subject "city is . . . empowered to adopt, amend . . . carry out a comprehensive plan" and a subject county is "granted authority to establish zoning regulations" under certain circumstances. If a city and county decide to avail themselves of the act's provision for a Metropolitan Area Planning Commission, they may do so through an appropriate ordinance enacted by the city council and a resolution adopted by the board of county commissioners. Section 866.5. If they do this then the first thing the planning commission is supposed to do is prepare a comprehensive plan for the development of the metropolitan area in question and submit it to the city and county governments for approval or rejection. Section 866.10.

In short, therefore, while plaintiffs should be entitled to elect representatives to legislative bodies governing them, such right is not shown to have been violated here. The only complaint here is that the "Metropolitan Area Planning Commission" had received a committee report "purporting to zone an area . . . called a Compatible Use Zone . . . in the vicinity of Altus Air Force Base, Altus, Oklahoma" and that a hearing on the ordinance was to be held March 6, 1973, as a prelude presumably to preparing a recommendation for the commission's creators.

Whatever other shortcomings the case may have, it is obvious that when the trial court heard plaintiffs' lawsuit on March 2, 1973, there was no evidence presented sufficient to form a foundation for injunctive relief. For though it does not appear that the planning commission had yet prepared or submitted a comprehensive plan to the city and county governments, they could nevertheless carry out an advisory role. Here the "purported ordinance" is nothing more than a "proposed ordinance" in reference to which the planning commission could lawfully hold a recommendatory public hearing on March 6.

In other words as the situation stood at the time this case was heard below we cannot assume the planning commission would *exceed its statutory powers* by attempting to legislatively adopt a zoning ordinance. Rather we assume it would merely hold a public hearing and make recommendations to the city and county legislative bodies (council and board). And because enactments of these governing bodies would be by representatives elected by plaintiffs their third complaint vanishes.

For the same reason plaintiffs' other propositions have no merit. We agree plaintiffs are not seeking to interfere with a legislative process as contended in their fourth one, but only with an advisory process. And as to their fifth one—that they will suffer irreparable injury by the actions of the planning commission leaving them without an adequate remedy at law —we think again it overlooks the fact that the planning commission cannot and presumably will not try to legislate in the manner feared by trying to "enact an ordinance."

No question, of course, is or can here be raised about the propriety of the exclusion-

ary nature of the proposed ordinance or of its potential confiscatory terms.[2]

Finding no basis for injunctive relief at the time of trial in either the pleadings or evidence we affirm the trial court judgment.

NEPTUNE, P. J., and BACON, J., concur.

---

2. Among other things it restricts large areas to a single family dwelling per 20 acres as requested by the United States Air Force under veiled threats of closing the base if the ordinance is not enacted. For an excellent relevant discussion of the difficulty in finding the fine line separating two sovereign powers—that of eminent domain and police power—see "The Dilemma of Airport Zoning —The Constitutionality of Police Power Regulation v. The Necessity of Eminent Domain Acquisition," Joseph Lesser, Institute on Planning, Zoning, & Eminent Domain, Southwestern Legal Foundation (1973) Matthew Bender; "The Impact of Zoning and Eminent Domain Upon Each Other," Julius Sackman, Institute on Planning, Zoning, & Eminent Domain, Southwestern Legal Foundation (1971), Matthew Bender. As one author put it, "It is not always easy to tell where regulation ends and taking begins."