Dear District Attorney Giulioli:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. In 2006 the Oklahoma Legislature passed Senate Bill 1706, [1] (uncodified), which provided for the transfer of the Muscogee (Creek) Nation Housing Authority and its property to the Muscogee (Creek) Nation. In 2008 the Oklahoma Legislature passed Senate Bill 1546, [2] which amended the uncodified law of Senate Bill 1706 and provided for reinstatement of the "payment in lieu of tax agreements that were in place as of June 1, 2006, with cities, counties, or other political subdivisions." Does Senate Bill 1546, which provides an ad valorem tax exemption for property transferred to the Muscogee (Creek) Nation from the Muskogee (Creek) Nation Housing Authority and for reinstatement of the "payment in lieu of tax agreements that were in place as of June 1, 2006, with cities, counties, or other political subdivisions" violate Article V, Sections 46, 59 (relating to special laws) of the Oklahoma Constitution?
 2. Under the foregoing fact situation, what is the validity and constitutionality of payment in lieu of taxes on tribally owned real property not held in trust? *Page 2 
 INTRODUCTION
You ask, does legislation which provides an ad valorem tax exemption for property transferred from a single-identified Indian housing authority to a single-identified Indian tribe, constitute a "special" law prohibited by the Oklahoma Constitution?
 HISTORY
The Oklahoma Housing Authorities Act ("Act") was enacted in 1965.[3] A housing authority is a "public body corporate and politic" created by statute to finance and develop adequate low-income housing. 63 O.S. 2001, § 1054[63-1054](a). Under the "United States Housing Act of 1937" and its subsequent amendments, federal funds are made available to assist housing authorities in developing low-income housing projects.[4] 42 U.S.C. §§ 1437 — 1440 (West, Westlaw through July 2009 amendments).
Indian housing authorities are authorized under the Act:
 There is hereby created, with respect to each Indian tribe, band, or nation in the state, a public body corporate and politic, to function in the operating area of such Indian tribe, band, or nation to be known as the "housing authority" of said Indian tribe, band, or nation, which shall be an agency of the State of Oklahoma, possessing all powers, rights, and functions herein specified for city and county authorities created pursuant to this act: Provided that said Indian housing authority shall not transact any business nor exercise its powers hereunder until or unless the governing council of said tribe, band, or nation, as the case may be, by proper resolution, declares that there is a need for an authority to function for said tribe, band, or nation. *Page 3 
63 O.S. 2001, § 1057[63-1057] (emphasis added). According to the Oklahoma Housing Finance Agency, there are currently 28 Oklahoma Indian Housing Authorities.[5]
Under the Housing Authorities Act:
 The property and funds of a housing authority are declared to be used for charitable purposes and to be public property used for essential public and governmental purposes, and such property and the authority are exempt from all taxes, including sales and use taxes and special assessments of the state or any state or local public body. In lieu of taxes on its property an authority shall agree to make such payments to the state or any state or local public body as the governing body of the city or county finds consistent with the maintenance of the low-rent character of housing projects and the achievement of the purposes of this act, provided that not less than one-half (1/2) of the annual amount of such payment in lieu of taxes shall be paid to the school district within which the property of the housing authority is located. The amount of money collected under the provisions of this act shall not be considered as chargeable income to the district receiving such funds. The tax exemption provided by this section does not apply to any portion of a project used by a profit-making enterprise, but in taxing such portions appropriate allowance shall be made for any expenditure by an authority for utilities or other public services which it provides to serve the property.
63 O.S. 2001, § 1066[63-1066] (emphasis added) (footnote omitted). The exemption from taxation is provided in the Oklahoma Constitution, Article X, Section 6, which provides for exemptions for "all property of this state, and of counties and of municipalities of this state." OKLA. CONST. art. X, § 6(A). *Page 4 
During the 2006 session, the Oklahoma Legislature passed Senate Bill 1706, [6] an uncodified law, which provided for the transfer of the Muscogee (Creek) Nation Housing Authority and its property to the Muscogee (Creek) Nation upon completion of certain conditions:
 Upon the filing of such a resolution or ordinance with both the Oklahoma Secretary of State's office and the county clerk's office in Okmulgee County, the management and control of the state agency, Muscogee (Creek) Nation Housing Authority, together with ownership of all the housing authority's assets and liabilities, shall transfer to the tribal Muscogee (Creek) Nation Housing Authority; and the state agency, Muscogee (Creek) Nation Housing Authority, shall cease to exist. No further action on the state's part is necessary to transfer title of all state agency housing authority real property to the tribal housing authority. The filing of a copy of this statute, a certified copy of the tribal resolution or ordinance and legal description of the land(s) shall transfer title. *Page 5 
2006 Okla. Sess. Laws ch. 119, § 1(B) (emphasis added). The Muscogee (Creek) Nation passed Tribal Resolution 06-055 on May 1, 2006 and filed it with the Oklahoma Secretary of State on May 5, 2006, [7]
and filed a Dissolution of Muskogee (Creek) Nation Housing Authority and Conveyance of Assets with the Okmulgee County clerk's office on October 16, 2006.[8] By the terms of Senate Bill 1706, the state agency Muskogee (Creek) Nation Housing Authority ceased toexist on October 16, 2006.
During the 2008 session, the Oklahoma Legislature passed Senate Bill 1546, which amended the uncodified law of Senate Bill 1706, providing for reinstatement of the "payment in lieu of tax agreements that were in place as of June 1, 2006, with cities, counties, or other political subdivisions."[9] This language was enacted to exempt property transferred to the Muscogee (Creek) Nation from ad valorem taxation. We found no other similar statutes authorizing the transfer of a specific state agency Indian housing authority's assets to a specific Indian tribe. Your questions as set forth above raise the issue of violations of Article V, Sections 46 and 59 of the Oklahoma Constitution.
 ANALYSIS
Article V, Section 46 of the Oklahoma Constitution provides in pertinent part, "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:. . . . Exempting property from taxation[.]"Id.
"Generally, a special law singles out particular persons or things upon which it operates, while a general law embraces and operates upon all or all within a class." Glasco v. State exrel. Okla. Dep't of Corr., 188 P.3d 177, 184 (Okla. 2008) (citingBurks v. Walker, 109 P. 544, 549 (Okla. 1909); Reynolds v.Porter, 760 P.2d 816, 821-22 (Okla. 1988)). Special laws are generally prohibited by the Oklahoma Constitution. The applicable provision reads, "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." OKLA. CONST. art. V, § 59.
The question therefore arises whether the Oklahoma Legislature, when it passed Senate Bill 1546 amending the uncodified law of Senate Bill 1706 and provided for reinstatement of the "payment in lieu of tax agreements that were in place as of June 1, 2006, with cities, counties, or other political subdivisions," passed a special law that violates the Oklahoma Constitution.
The distinction created by these constitutional provisions is between general laws and special laws. General laws are those which have a uniform application. "Uniformity, however, does not mandate that the law must operate upon every person and every locality in the state." Blue v. Bd. of Tr., ___ P.3d ___, *Page 6 2009 WL 1863688, at *2 (Okla. 2009) (citing City ofEnid v. Pub. Employees Relations Bd.,133 P.3d 281, 286 (Okla. 2006)). A class may be very limited and include only a single member. City of Enid, 133 P.3d at 287. *Page 7 
The Oklahoma Supreme Court stated:
 This Court's precedent has established a classification-based analysis for challenges brought under Art. 5, § 46. That is, where a classification created by statute is founded on real and substantial distinctions, and does not target for different treatment less than an entire class of similarly situated persons or things, the statute will be deemed permissible. Special laws are those that rest on a false or deficient classification and do not embrace all of their natural class. Article 5, § 46 absolutely prohibits the passage of any special law relating to one of its enumerated subjects.
Blue, 2009 WL 1863688, at *2 (citations omitted).
In City of Enid, the court addressed the issue of classification:
 [W]here a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject-matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnish[es] a practical and real basis for discrimination.
Id. at 287 (quoting Burks v. Walker,109 P. 544, 549 (Okla. 1909)). "The number of persons or things upon which the law has a direct effect may be very few, but it must operate uniformly upon all brought within the class by common circumstances." EOG Res. Mktg., Inc. v. Okla. State Bd. ofEqualization, 196 P.3d 511, 521 (Okla. 2008). The Oklahoma Supreme Court held that a class of one can pass constitutional scrutiny under an Article V, § 46 analysis. City of Enid,133 P.3d at 287.
In interpreting Article V, Section 59, the Oklahoma Supreme Court has said, "[A] statute which applies to all persons or things of a designated class uniformly throughout the state is a general law within the meaning of the Oklahoma Constitution."Mistletoe Express Serv. v. UPS, 674 P.2d 1, 10 (Okla. 1983). In determining "whether an act is a general law as distinguished from a local or special law the answer . . . depends fundamentally on whether there is a proper and legitimate classification, and each case must be decided on its own merits." Elias v. City ofTulsa, 408 P.2d 517, 519 (Okla. 1965). In Elias the act at issue empowered a city of no less than 180,000 nor more than 240,000 population to zone territories lying within five miles of its boundaries. Id. at 520. Based on the facts presented, the act applied to only one county, and in fact eliminated another county having a city with a population of 243,504 without any "distinctive characteristic" for the difference in treatment.Id. The court in Elias held that the act provided for a population classification that was arbitrary and a subterfuge, and was therefore invalid as a "special" or "local" law.Id. at 521.
In the situation about which you ask, out of all housing authorities established in Oklahoma by cities, counties, rural electric cooperatives, and Indian tribes, bands or nations, Senate Bills 1706 and 1546 only apply to a single entity, the Muscogee (Creek) Nation Housing Authority. These bills do not *Page 8 
operate equally on all housing authorities; in fact, they cannot apply to any other housing authority. See id. No other housing authority is eligible for the treatment of these measures except the Muscogee (Creek) Nation Housing Authority. Senate Bill 1546, which amended the uncodified law of Senate Bill 1706, providing for the reinstatement of "payment in lieu of tax agreements that were in place as of June 1, 2006, with cities, counties, or other political subdivisions," is arbitrary and capricious because the class it affects lacks any real or substantial distinctive characteristic. The acts specifically spell out the sole entity eligible for different tax treatment.[10]
Senate Bill 1546 attempts to exempt property transferred from the state agency Muscogee (Creek) Nation Housing Authority to the Muscogee (Creek) Nation from ad valorem taxation. The Oklahoma Constitution provides the standards for exemption from ad valorem taxation. See OKLA. CONST. art. X, § 6. Court decisions have found this section to be "self-executing." Presbyterian Hosp.,Inc. v. Bd. of Tax-Roll Corr., 693 P.2d 611, 617 (Okla. 1984);City of Hartshorne v. Dickinson,249 P.2d 422, 424 (Okla. 1952). Property in Indian housing authorities formed under the Oklahoma Housing Authorities Act is exempt from ad valorem taxation under the Oklahoma Constitution as statutorily such entities are "an agency of the State of Oklahoma." 63 O.S. 2001, § 1057[63-1057]. Property transferred from the Muscogee (Creek) Nation Housing Authority to the Muscogee (Creek) Nation is no longer held by "an agency of the State of Oklahoma."
Oklahoma law provides that some tribally owned land is exempt from ad valorem taxation. Property tax exemptions for Indian tribes are found in Article X, Section 6(A), which provides that property "may be exempt by reason of treaty stipulations, existing between the Indians and the United States government, or by federal laws, during the force and effect of such treaties or federal laws."Id.
Federal law defines Indian Country as:
 Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means
 (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, *Page 9 
 (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and
 (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.
18 U.S.C. § 1151 (West, Westlaw through July 2009 amendments). A reservation can be formal or informal, the latter being land held in trust by the Federal Government for Indian use. See Okla. TaxComm'n v. Chickasaw Nation, 515 U.S. 450, 453 n. 2 (1995);Okla. Tax Comm'n v. Sac Fox Nation, 508 U.S. 114, 123 (1993). Absent an exemption, real property held by an Indian tribe is subject to Oklahoma ad valorem taxation.
Article X, Section 5(A) of the Oklahoma Constitution provides: "the power of taxation shall never be surrendered, suspended or contracted away[,] B. Taxes shall be uniform upon the same class of subjects." Id. Article X, Section 8(A) of the Oklahoma Constitution provides, among other things, that "Except as otherwise provided in Article X of this Constitution, . . . all
property which may be taxed ad valorem shall be assessed for taxation. . . ." Id. (emphasis added). The Legislature is prohibited from passing any law conferring a tax exemption to an individual except as may be provided elsewhere in the Constitution. OKLA. CONST. art. V, § 50. Further, the Legislature may not confer upon an individual or corporation "any exclusive rights, privileges, or immunities." OKLA. CONST. art. V, § 51. Thus, lacking a specific exemption or a law providing for another form of taxation as a substitute, all property must be assessed and taxed ad valorem. See In re Okla. Nat'l Life Ins. Co.,173 P. 376, 380 (Okla. 1918). Absent an exemption, property held by an Indian tribe is subject to ad valorem taxation.
Title 68, Section 2804 of the Oklahoma Statutes provides: "All property in this state, whether real or personal, except that which is specifically exempt by law, and except that which is relieved of ad valorem taxation by reason of the payment of an in lieu tax, shall be subject to ad valorem taxation." Id. This provision was discussed in Liddell v. Heavner,180 P.3d 1191 (Okla. 2008), where the Oklahoma Supreme Court stated, "All non-exempt property is taxed ad valorem unless the Legislature provides otherwise through the enactment of a substitute tax."Id. at 1196. Although the Legislature attempted to confer the benefits of tax exemption through the mechanism of an "in lieu tax," even the Legislature cannot do indirectly what it cannot do directly. See Riley v. Carter, 25 P.2d 666, 678 (Okla. 1933). Further, in its attempt to confer tax benefits, the Legislation violated the Oklahoma Constitution's "special law" prohibition.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Senate Bill 1546, which amended the uncodified law of Senate Bill 1706, providing for reinstatement of the "payment in lieu of tax agreements that were in place as of June 1, 2006, with cities, counties, or other political subdivisions," is a "special law" that exempts from taxation *Page 10 property transferred from the state agency Muscogee (Creek) Nation Housing Authority to the Muscogee (Creek) Nation within the meaning of the Oklahoma Constitution. The Oklahoma Legislature is prohibited from passing any local or special law authorizing the exemption of property from taxation. OKLA. CONST. art. V, §§ 46, 59.
 2. Absent an exemption, real property held by an Indian tribe is subject to Oklahoma ad valorem taxation. OKLA. CONST. art. X, § 6; 18 U.S.C. § 1151 (West, Westlaw through July 2009 amendments); Okla. Tax Comm'n v. Chickasaw Nation, 515 U.S. 450, 453 n. 2 (1995); Okla.Tax Comm'n v. Sac Fox Nation, 508 U.S. 114, 123 (1993).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DAVID L. KINNEY ASSISTANT ATTORNEY GENERAL
[1] See 2006 Okla. Sess. Laws ch. 119, § 1.
[2] See 2008 Okla. Sess. Laws ch. 62, § 1.
[3] See 1965 Okla. Sess. Laws ch. 251, §§ 1 ? 32 (codified as amended at 63 O.S. 2001 Supp. 2008, §§ 1051 ? 1084).
[4] The federal government now operates Indian housing programs under a new set of laws, known as the Native American Housing Assistance and Self-Determination Act ("NAHASDA"). 25 U.S.C. §§ 4101 ? 4243 (West, Westlaw through July 2009 amendments).
[5] See http://www.ohfa.org/OldPages/Rental/PHAs1/ohfind.html (last visited July 6, 2009).
[6] See 2006 Okla. Sess. Laws ch. 119, § 1.
[7] See
http://www.sos.state.ok.us/documents/filelog/63947.pdf (last visited Aug. 11, 2009).
[8] Available at Okmulgee County Courthouse, bk. 1903, at 171 — 85 (Oct. 16, 2006).
[9] 2008 Okla. Sess. Laws ch. 62, § 1(A).
[10] An Attorney General's Opinion stating that an act of the Legislature is unconstitutional is advisory only and not binding on a state official. State ex rel. York v. Turpen,681 P.2d 763, 767 (Okla. 1984). Only a court of competent jurisdiction can issue a binding opinion that a legislative act is unconstitutional. Id. *Page 1