## THOMPSON v. STANLEY et al.

No. 28241.   Oct. 4, 1938.

E. F. Thompson, pro se., J. A. Rinehart, for plaintiff in error.

S. T. Roberson, County Atty., Lucius Babcock, Jr., Asst. County Atty., Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendants in error.

DAVISON, J. This is an appeal from a judgment of the district court of Canadian county denying a writ of mandamus.

It is shown from the record that the plaintiff in error, E. F. Thompson, hereinafter referred to as plaintiff, in the general election of 1936 was re-elected for the office of county judge of Canadian county for the ensuing term. The plaintiff, the incumbent county judge, failed to qualify as required by statute within ten days from the date the new term for which he was elected was to begin.

It is shown that the plaintiff continued to serve as county judge and on the 29th day of January, 1937, upon the plaintiff's application, he was appointed by the board of county commissioners as county judge of Canadian county . and thereupon took the oath of office and filed his bond and proceeded upon the duties of county judge.

In the meantime, and on the 21st day of January, 1937, the Governor of Oklahoma approved an act of the Sixteenth Regular Session of the Legislature, being House Bill No. 68, which enactment carried the emergency clause, making it effective from date of approval. This act affected only four counties in the state and had the effect of raising the salary of the county judge in · Canadian county from $175 per month to $225 per month.

The plaintiff having filed two monthly statements of account with the county commissioners for his salary at $225 per month and same having been allowed only for the sum of $175 per month, he presented his petition to the district court for a writ of mandamus asking the court to direct the county commissioners, the defendants herein, to allow his claims. The trial court denied the request for writ of mandamus. The plaintiff has appealed.

It is first contended that House Bill No. 68 is a law of a general nature with reference to the salary of county judge, though applicable to only a certain portion of the state; that the classifications were not capricious, arbitrary, nor false and that the Legislature had the power to pass such a law.

The defendants claim that the law is unconstitutional in that it is special in its nature and not uniform in its operation. Section 1 of the act provides:

"In all counties in the state of Oklahoma, having a population of not less than 24,500 and not more than 33,000, based on the last preceding federal census, and having an assessed valuation of not less than $15,000,000, the county judge and county attorney shall each receive an annual salary of $2,700 per year, payable monthly.

"Section 2. The provisions of this act shall apply to the salaries of the above-named officers at the first term of office permissible under the Constitution of Oklahoma."

It was admitted in the hearing of this cause that no publication of the intended introduction of said House Bill No. 68 was ever had. That being true, the legality of the act will first be considered upon the theory that the act is general in its nature and therefore no publication was necessary.

Section 59, article 5, of the Constitution provides:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

Section 46, article 5, of the Constitution of Oklahoma prohibits the passage of any local or special laws regulating the affairs of counties, except as otherwise provided.

By the provisions of chapter 11, S. L. 1933, the salaries of county judges and county attorneys of the counties in Oklahoma are fixed on what is termed a sliding scale, based upon the population of the counties shown by the 1930 federal census or by any succeeding federal census. That was the last general law fixing the salaries of county officers. Under the scale therein provided the present salaries of the county attorneys and county judges of the state are grouped into ten (10) classes relative to population and salary. The classification, under the 1933 act, where counties have a population from 24,200 to 25,000, the county judges and county attorneys receive a yearly salary of $1,900 'and in counties having a population of 25.000 to 43,000, they receive a salary of $2,100.

We observe from these two classifications that the county judges and county attorneys are receiving $1,900 and $2,100, respectively. This classification, as to population, includes the classification embraced in House Bill No. 68, which, as shown, specifies a population of not less than 24,-500 and not more than 33,000. This classification of the 1933 law includes all of the counties that are to be affected by House Bill No. 68. The counties affected by House Bill No. 68, with their population by last federal census, are as follows: Logan, 27,-761; Washington, 27,777; Canadian, 28,115, and Pontotoc, 32,469. This law applied to only the counties named because of the further classification of having an assessed valuation of not less than $15,000,000.

It is further noticeable from the assessment records in the State Auditor's office, of which this court takes judicial knowledge, that eleven (11) other counties in the state also have a population of not less than 24,500 and not more than 33,000 population, but none of them have an assessed valuation of $15,000,000.

We observe that because of the provision in the bill relative to assessed valuation, eight of the eleven counties coming within the population classification named in H. B. No. 68 have a greater population than some of those that will be affected by the bill, but owing to the fact that they have a less valuation, the county judges and county attorneys in these eleven counties must receive a salary of from $1,900 to $2,100, while the four counties, some with a less population and a greater valuation, may receive under the bill, a $2,700 salary.

It is also shown that 16 other counties in the state, each having a population of more than 33,000, and eleven of same having an assessed valuation of more than $15,000,000, but none of them come within the provisions of H. B. No. 68, and under chapter 11, S. L. 1933, the county judges and county attorneys in these counties receive a salary ranging from $2,100 to $2,400, while in the four counties coming within the provisions of the bill with less population and less assessed valuation would receive $2,700.

In Caddo County v. Chicago, R. I. & P. Ry. Co., 155 Okla. 32, 7 P.2d 900, this court held:

"Where an act of the Legislature excepts from the operation of the general laws of this state one or more counties without any fixed basis for such discrimination and no good reason is shown why all should not be subject to the same rule, it is invalid under section 59, article 5, of the state Constitution, which provides that laws of a general nature shall have uniform operation throughout the state."

"Chapter 78, Session Laws 1921 (section 6430, C. O. S. 1921), is arbitrary; there is no reason or basis therefor; it is in violation of the provisions of section 59, article 5, of the Constitution of Oklahoma and is unconstitutional and void."

In that case the court was considering legislation providing for salary of county commissioners. Section 6430, C. O. S. 1921 (section 7856, O. S. 1931), was a general statute relative to the salary of county commissioners. It provided that in counties of the state having a population of 50,000 inhabitants and over, the salary of the county commissioners was fixed at $800. Chapter 78, S. L. 1921, brought forward as section 6430, C. O. S. 1921 (section 7858, O. S. 1931), amended section 1, chapter 38, Session Laws 1919, and provided that in counties having a population of over 41,000 and not more than 51,000 inhabitants, the salary of the commissioners was fixed at $1,500. No provision was made therein for the salary of the commissioners in counties having a population in excess of 51,000 and less than 80,000 and the salaries in such counties remained at only $800. The court said:

"There is no fixed basis for the discrimination made by the provisions of section 6430, supra. We know of no valid reason why the county commissioners of a county having a population of 79,000 should receive less salary than the county commissioners of a county having a population of 41,000."

The provision of section 6430, C. O. S. 1921, was held to be arbitrary and in violation of the provisions of section 59, article 5, of the Constitution of Oklahoma in that no reason existed as the basis for the classification therein adopted.

To the same effect is the holding in Re Bucher, Co. Atty., 162 Okla. 168, 20 P.2d 150, wherein this court construed the provisions of 6461, C. O. S. 1921 (section 8010, O. S. 1931), which provides for salaries of county judges and county attorneys in counties having a population of not less than 37,499 and not more than 37,750 as shown by the last census. The county attorney was to be paid a salary of $3,500 and the county judge a salary of $3,000, and the salary of a county attorney of a county having a population of 50,000 under the general salary act was only $2,500.

In the cases here cited, this court was dealing with the same questions presented here, and we think they are decisive of the questions here involved.

These decisions are further supported by the decisions of this court in Wade v. Board of Com'rs of Harmon County, 161 Okla. 245, 17 P.2d 690; Excise Board of Kay County v. Chicago, R. I. & P. Ry. Co., 155 Okla. 34, 7 P.2d 902; Roberts v. Ledgerwood, 134 Okla. 152, 272 P. 448.

The decision of the trial court in denying the writ of mandamus, while based upon other grounds, is sustained for the reason that H. B. No. 68, supra, is unconstitutional and void.

Since we have decided the case by declaring the hereinbefore referred to act unconstitutional, we deem it unnecessary to discuss or determine other questions raised by the parties hereto.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, CORN, GIBSON, and HURST, JJ., concur. PHELPS, J., not participating.