WILLIAMS et al. v. HUTCHENS, Sheriff, et al.

No. 29508.   May 14, 1940.

*102 P. 2d 841.*

Roy Frye, of Sallisaw, and Joseph R. Brown, of Ft. Smith, Ark., for plaintiffs in error.

W. B. Wall and J. Fred Green, both of Sallisaw, for defendants in error.

OSBORN, J. This action was instituted in the district court of Sequoyah county by Leon A. Williams and Louis A. Beland, co-partners, doing business under the name of West Fort Smith Stock Yards, against Charley Hutchens, sheriff of Sequoyah county, the under-sheriff, deputy sheriff, the cattle brand inspector of said county and the county attorney, wherein it was sought to obtain an injunction to enjoin defendants from enforcing against plaintiffs the provisions of article 4, chapter 39, Session Laws 1935, which is an act providing for the inspection of cattle prior to shipment thereof out of certain counties in the state, for the purpose of determining ownership. The act is calculated to prevent loss of cattle by theft. The trial court refused the injunction, and plaintiffs have appealed. The parties will be referred to as they appeared in the trial court.

Section 1 of the act provides as follows:

"The board of county commissioners of each county having a population of less than ten thousand as determined by the last preceding Federal Decennial Census or by any succeeding Federal Census and in all counties of the state where cattle are by law permitted to run at large on open range shall have the authority to appoint a (sic) cattle brand inspectors in such county, the sheriff and his deputies are by this act declared to be ex officio cattle brand inspectors."

Section 2 of the act provides as follows:

"It shall be the duty of every person shipping or driving any cattle out of such county to hold the same for inspection as to ownership by one of the cattle brand inspectors. It shall be unlawful for any person to ship, drive or in any manner remove beyond the border of such county any head, herd or band of cattle until they have been so inspected, which inspection shall be evidenced by a certificate of said inspector attached to the way bill for such shipment."

Section 3 provides for notification to the inspector of the time and place where cattle will be ready for inspection and makes it the duty of the inspector to inspect the cattle, make a record of such inspection and give a certificate of inspection to the owner of said cattle or the person in charge of the shipment of the same. Section 4 provides that the inspector shall not issue a certificate of inspection until he is satisfied that the cattle are being shipped or driven by the owners thereof as evidenced either by the brand or mark of said cattle or by proper bill of sale. It is further provided that if the animals are unbranded or not marked or not accompanied by a proper bill of sale, the cattle shall be deemed to be estray and shall be seized and sequestrated by the inspector for disposal as provided by law. Section 5 provides for payment by the owner to the inspector of an inspection fee of five cents for each animal inspected.

The cause was tried upon a stipulation of facts, the material portions thereof being as follows:

"That the plaintiffs do an extensive business of buying, selling and shipping cattle from their stock yards in said county. That said plaintiffs buy, sell and ship cattle from their stock yard in said county, which cattle originate and come from stockmen and raisers located without the state of Oklahoma and are brought into said stock yards and thereafter shipped therefrom by these plaintiffs to points outside of the state of Oklahoma.

"That said plaintiffs buy, sell and ship cattle from their stock yards, which cattle originate and come from that part of Sequoyah county which is closed range under chapter 39, article 3, section 1 of 1935 Laws of Oklahoma and are shipped beyond the borders of Sequoyah county.

"That said plaintiffs buy, sell and ship cattle from their stock yards, which cattle originate and come from that part of Sequoyah county which is open range under chapter 39, article 3, section 1 of 1935 Laws under the proviso of said section, and are shipped beyond the borders of Sequoyah county.

"That said plaintiffs buy, sell and ship cattle from the stock yards, which cattle originate and come from counties of the state of Oklahoma which are open range under the proviso in chapter 39, article 3, section 1 of 1935 Laws of Oklahoma, which cattle are shipped beyond the borders of Sequoyah county.

"That said defendants and each of them are attempting to collect and are demanding of these plaintiffs 5 cents per head of all cattle coming into and shipped from the stock yards of plaintiffs as an inspection fee as provided by chapter 39, article 4 of 1935 Laws of Oklahoma. That said inspection fee is demanded by the defendants from these plaintiffs on all cattle regardless from whence they come, and which are thereafter shipped and driven from Sequoyah county, Oklahoma, to points beyond and outside of the state of Oklahoma."

It is urged first that the act is violative of section 59, art. 5, of the Constitution of Oklahoma, which provides that laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted. In the case of Tucker v. Mullendore, 180 Okla. 180, 69 P. 2d 35, it was said:

"In Roberts v. Ledgerwood, 134 Okla. 152, 272 P. 448, 450, this court, in the syllabus, said: 'In order for a law to be general in its nature and to have a uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. * * * But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination.' Citing Burks v. Walker, 25 Okla. 353, 109 P. 544."

See, also, Sheldon v. Grand River Dam Authority, 182 Okla. 24, 76 P. 2d 355, and cases therein cited; Wilkinson v. Hale, 184 Okla. 165, 86 P. 2d 305; Thompson v. Stanley, 183 Okla. 445, 83 P. 2d 386; Barrett v. Board Com'rs, Tulsa County, 185 Okla. 111, 90 P. 2d 442; United States v. Mullendore, 74 F. 2d 287.

It is noted that by the provisions of section 1 of the act, the same is made applicable in those counties having a population of less than ten thousand and is likewise made applicable in counties where cattle are by law permitted to run at large on open range. The population of Sequoyah county is in excess of ten thousand, therefore the act is applicable in the instant case only by virtue of the fact that cattle are permitted by law to run at large on open range within a certain area in Sequoyah county. It is noted that a portion of said county is what is known as closed range. As to whether or not the classification on the basis of population is a valid one is not presented in this case, and upon that question we here express no opinion. We are of the view, however, that the application of the act to those counties where cattle are permitted to run at large and the exclusion of other counties is a reasonable and valid classification. The intention of the Legislature is clearly established to the effect that the law was intended to have application only in those areas of the state where the raising and marketing of cattle is a dominant industry and that it was the intention to exclude those areas where the dominant industry is agriculture and likewise those areas of a large urban population. It is obvious that the theft of cattle is more easily accomplished in those areas where cattle are permitted to run at large on open range. Insofar as the cause is here presented, the act is not violative of section 59, article 5, supra.

Further contention is made that the act is not applicable to plaintiffs. It is shown that their stock pens are located in the town of Moffett, in Se-

quoyah county, and in that area cattle are not permitted to run at large. It is argued that since the cattle are being shipped by plaintiffs out of an area which is referred to as closed range, the law does not require an inspection. As we view it, the act is not susceptible of the construction contended for by the plaintiffs. The act does not purport to fix open range areas as the respective fields in which the law was designed to operate. It is provided that "it shall be unlawful for any person to ship * * * beyond the border of such county any * * * cattle until they have been so inspected." As the cause is here presented, "Counties of the state where cattle are by law permitted to run at large on open range" are fixed as such fields of operation. Sequoyah county is such a county, although a portion thereof is closed range. The language employed is clear and unmistakable. We must give effect to these plain and positive provisions.

The judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, HURST, DAVISON, and DANNER, JJ., concur. CORN and GIBSON, JJ., absent.